UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

02 OCT 29 PM 3: 43

U.S. DISTRICT COURT
N.D. OF ALABAMA

CATHERINE V. LAWTON,    )
                        )
        Plaintiff,      )
                        )
v.                      )        CV 01-AR-0444-S
                        )
ANTHONY J. PRINCIPI, SECRETARY   )
U.S. DEPARTMENT OF VETERANS      )
AFFAIRS                          )
        Defendant.               )

ENTERED

OCT 29 2002

## MEMORANDUM OPINION

Before the court is the motion of defendant, Anthony J.
Principi,'s Secretary of the U.S. Department of Veterans
Affairs'(Medical Center of Birmingham "VAMC")for summary judgment
seeking dismissal of the action brought by plaintiff, Catherine
V. Lawton ("Lawton"), for failure to promote her on account of
race and her sex, and for retaliating against her, all in
violation of Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e-16.  On June 18, 2001, the court
dismissed with prejudice the action, insofar as Lawton sought
punitive damages, insofar as she made claims under the Age
Discrimination and Employment Act ("ADEA"), and insofar as she
sought relief arising out of events not accepted for processing
by defendant in its notice of October 26, 2000.

## Material Facts

Lawton, a white female employee of VAMC, began her thirty
year career with the federal government in 1965 as a secretary in

1

the office of the Assistant Chief of Staff for Intelligence.  In 1984, Lawton began working for VAMC as a secretary/stenographer at a GS-3 level.  Lawton transferred in 1987 to the administrative side of the hospital accepting a GS-5 level position as Program Assistant in the National Disaster Medical System Department, which later became the Emergency Medical Preparedness Office.  While in this position Lawton also served as an Equal Employment Opportunity (EEO) counselor from approximately 1988 to 1996.  Lawton ultimately achieved the level of GS-7 in this position.

In or near October of 1996, Lawton became a Program Assistant to the acting EEO Manager, Carol McFadden ("McFadden") of the Birmingham VAMC, and ceased her collateral duties as an EEO counselor.  In addition to serving as an assistant to McFadden, Lawton also provided support for VAMC's in-house counsel Michael Sanderson ("Sanderson").  McFadden, a white female, became the temporary acting EEO Manager when Audrey Johnson, the then current EEO Manager, left.  McFadden, a GS-11 Personnel Management Specialist was given a 120-day temporary promotion to GS-12, the pay grade for the EEO Manager position, when she became the "Acting" EEO Manager.  McFadden was temporarily promoted to "Acting" EEO Manager because she had been an EEO Specialist before, and she had the most experience in EEO matters.

2

In November 1996, Michael Watts ("Watts"), a black male, was hired as the EEO Manager for the Birmingham VAMC and accordingly became one of Lawton's supervisors.  Watts' starting pay grade was a GS-11, step 5.  After his arrival at the VAMC, Watts in collaboration with Sanderson began the process of writing a new Position Description ("PD") for Lawton, and as a result she was promoted to a GS-8 level in May of 1997.

During this period, Lawton split her duties between the EEO Manager's office and the office of the Regional Counsel, but whenever Watts was out of the office, fifty percent of her work was keeping the EEO office up and running smoothly by keeping the complaints flowing and the deadlines met.

Watts resigned his position as EEO Manager around February of 1998, and upon leaving he strongly recommended to the VAMC's Director, Y. C. Parris ("Parris"), that Lawton be appointed acting or Interim EEO Manager until a new EEO Manager could be located.

According to Karen Shamlin ("Shamlin"), Associate Director of the Birmingham VAMC, this was a period of uncertainty for the agency as it was undergoing a change in its EEO Program administration.  Shamlin testified by affidavit that the Department of Veteran's Affairs ("VA") was restructuring its EEO Program.  In January 1998, the Office of Resolution Management ("ORM") became responsible for handling all EEO complaints

3

through their regional offices.  As a result of the
reorganization, the EEO work load at the Birmingham office was
lessened, and a decision was made to recruit a person with
knowledge of labor relations as well as EEO issues, inasmuch as
the Birmingham VAMC had a significant workload related to labor
relations.  The position was moved to a GS-301-12 Program
Specialist series and advertised accordingly.  There were no
applicants.  Unfortunately, according to Shamlin over the next 18
to 24 months it became ever increasingly apparent that the VAMC's
efforts to centralize the EEO process were not going to meet the
facility's needs, and it was placing an added burden on the ORM
process.  According to Shamling in January 2000, after many
months of evaluating the needs of the facility, the availability
of applicants, and the new demands placed on the local facility
by the developing ORM program, the decision was made to
reestablish the EEO Manager position in the 260 series, GS 12-13.

Concurrently, while the VAMC was undergoing changes in its
EEO Program, Parris through a non-competitive temporary
appointment made Lawton "Acting" Interim EEO Manager.  According
to VA guidelines, competitive promotion procedures must be used
when a temporary promotion will exceed 120 days.  However, "[a]n
initial competitive temporary promotion may be made for a
specified period of not more than five years in accordance with 5
CFR 335.102(f)."  See (VAMC Brief in Reply, Attachment A,

4

TEMPORARY PROMOTIONS, MP-5, Part I, Chap. 335 p. C18).[1]  Lawton
served in the capacity of "Acting" EEO Manager from February 1998
until July 2000.  Lawton's duties as "Acting" EEO Manager were in
addition to her duties as a Program Assistant for the Regional
Counsel's office.  Inasmuch as Lawton was performing duties
outside her job description, she requested that a notation be
placed in her Performance Plan of April and November of 1999,
acknowledging her duties and responsibilities as "Acting" EEO
Manager.  Lawton never received a response to these requests.
Lawton then made several request in March, June, and July of 1999
for a desk audit by a Classification Specialist from Human
Resources to redefine her job classification and grade.  A desk
audit was performed by McFadden on October 12, 1999, and as a
result Lawton was promoted from a GS-8 to a GS-9, first on a
temporary basis for 120 days, and then permanently on May 12,
2000.  McFadden found that Lawton was not doing the full duties
of an EEO Manager while acting in this capacity, but rather she
was keeping the office running on a day-to-day basis.  *See* (VAMC
Exh. 8).  The VAMC does not dispute that Lawton did excellent
work while acting as Interim EEO Manager.  However, the EEO
Manager position is a GS-12 level position, and Lawton was not
qualified to perform the full extent of the duties at that level.

------

[1]If all potential candidates are properly informed in
advance, a temporary promotion may be made permanent.

McFadden testified she considered a GS-11 pay grade for Lawton, but Lawton was not qualified because she lacked time-in-grade at the GS-9 level and mastery of EEO rules and regulations. According to McFadden, when Lawton first assumed the duties of "Acting" EEO Manager she was not qualified for a GS-9 because she lacked time-in-grade at the GS-8 level, but by the time the desk audit was completed Lawton qualified for a GS-9. McFadden made the following recommendation as a result of the desk audit conducted on Lawton's position: "1. Announce the position of EEO Specialist GS-9, Target 11 or 11 to administer the EEO Program at this Medical Center. 2. In the interim, reassign Ms. Lawton to an accurate position description. If a promotion is involved, other than a temporary promotion to GS-9 for 120 days, then the position would have to be announced competitively." (VAMC Exh. 7).

When Lawton first assumed the position of "Acting" EEO Manager she knew it would be on a temporary basis, and that eventually the position would be filled at the GS-12 level. Lawton was "Acting" EEO Manager for nearly two and half years.

In March 2000, after Lawton's temporary promotion to GS-9 ended, a vacancy announcement for the position of EEO Manager was officially issued by the Birmingham VAMC. The position announcement listed the opening date as March 10, 2000, with a closing date of March 24, 2000 for a GS-260-12, Target 13 or GS-

13. (Lawton Depo., p. 100; Exh. 7).  Lawton contends that Parris told her that he was announcing the position at that time because of a mandate from the Central Office in Washington, and that he felt that an attorney should be selected for the position. Lawton contends that there was never a mandate from Washington to fill the EEO Manager's position at a GS-12/13, at least not any time around 2000, but instead that the VAMC only announced the position after Lawton's stint as a temporary GS-9 was over. Lawton testified that Parris' stated he had a preference for an attorney to fill the EEO Manager's slot, and it was her perception that this meant that he wanted a man for the position. Parris in his deposition testimony did not recall telling Lawton that he felt an attorney was necessary for the position.  The position announcement does not list being an attorney or having a law degree as a requirement, although it does note that skill and experience in litigation is a consideration. (VAMC, Exh. 9) Richard DeFilippo ("DeFilippo") was ultimately selected for the position.  He is not an attorney.  Lawton also testified that Parris had made a statement to the effect that the EEO Manager needed to be "a person of color." (Lawton Depo., p. 106). However, in his deposition Parris denied making any such statement, but recalled that someone had approached him with the suggestion that "someone of an ethnic group" should be hired, to which he responded "we will select the best candidate for the

job." (Parris Depo., p. 67-8).  DeFilippo, the selectee, is a white male.  Lawton had been hopeful that the EEO Manager's position would be advertized at the GS-9/Target 11 level, which she believed would have allowed her to compete for the position. However, the position announcement of March, 2000 was essentially identical to the previous announcement for the position of EEO Manager that Watts applied for and received in 1996, a GS-260-12/13.  According to both announcements, qualified applicants must have at least one year of experience in the GS-11 or its equivalent pay grade.

After the EEO Manager's position was posted, Lawton requested additional training on Title VI and Title IX being held in April of 2000.  However, Shamlin denied Lawton's request to attend the April training, informing her that a slot for the May class had been reserved depending on the outcome of the EEO Manager recruitment.  Lawton again requested to attend the training session in May, but was denied on the basis that the EEO Manager would attend when the position was filled.  While acting as the EEO Manager, Lawton attended a total of four training seminars.

Lawton applied for the position of EEO Manager, notwithstanding her lack of experience and time-in-grade at the GS-11 level.  The following candidates also applied for the position of EEO Manager and were deemed to be qualified for the

EEO Manager position by McFadden: 1) David Brown, GS-11 Program Analyst with the Department of Agriculture in Washington, D.C.; 2) Earl Dean, GS-11 EEO Specialist with the VA's ORM office in Washington, D.C.; 3)Richard DeFilippo, GS-11 Building Management Specialist with the Social Security Administration in Birmingham; 4) Florine McCall, GS-11 EEO Counselor with the VA's ORM office in Bay Pines, Florida, and; 5) Jerry Tucker, GS-11 Senior Contract Administrator with the Defense Logistics Agency in Birmingham. McFadden did not select Lawton as a qualified candidate because she lacked "one year of specialized experience at the GS-11 level" and the requisite time-in-grade. Only applicants with GS-11 experience or higher were selected as qualified for the position and interviewed. As mentioned above, DeFilippo, a white male, at the GS-11 level was selected for the position.

Lawton was notified in April, 2000 that she had not been deemed qualified for the position of EEO Manager, and she began the EEO process by contacting an EEO Counselor on June 8, 2000. Initially, Lawton claimed that she was not select as a qualified candidate due to her race, sex, and age. Lawton admits that "race now probably is a moot issue," as DeFilippo, the selectee, is a white male. (Lawton Depo., pp. 128, 131).

Lawton's view of this case is that she would have been qualified to compete for the EEO Manager's position and had the

9

requisite time-in-grade, but for the VAMC's persistent delays in acknowledging her work efforts as "Acting" EEO Manager.  Lawton contends that VAMC's delay was on account of her race and/or gender, and accordingly she was denied the position of EEO manager because of the VAMC's gender and/or race bias.  It is Lawton's position that she was otherwise qualified, beyond the technical requirements, for EEO Manager because she acted as the Interim EEO Manager for over two years. (Lawton Depo., pp. 131-132).

As additional evidence of gender bias, Lawton contends that she made the "observation that there have been more males hired than females hired by Mr. Parris" for vacancies within his service.  However, Lawton has not produced any data to substantiate this observation.  The VAMC points out that during the two year period for which records are routinely maintained, January 2000 to May 2002, there have only been two selections, DeFilippo for the position that is the subject of this lawsuit and Susan Demitz for the position of Heath Systems Specialist.

### Retaliation

Lawton makes an additional claim of retaliation in her "First Amended Complaint" based on a "buyout" offer made in September of 2001, as part of the settlement negotiations in this action.  The VAMC offers a "Buyout" Program under the VA's Voluntary Separation Incentives Program (VSIP) that is based upon

whether an individual is in a position designated by the VA as eligible for a buyout offer; and is serving under an appointment without time limit and has been continuously employed by the VA for at least three years.  "Buyouts" may be coupled with retirement if the individual meets the age and service requirements.  Lawton expressed an interest in the "Buyout" Program and was placed on a list for consideration.  Ultimately, Lawton was offered the "buyout," but only under the express condition that she dismiss her lawsuit against the VAMC.  Lawton claims that VAMC's refusal to offer her a "buyout" with no strings attached was in retaliation for filing the present action.  The VAMC denies that this is an act of retaliation, pointing out that the "Buyout" Program is totally discretionary on the part of the agency.  Furthermore, the VAMC contends that because the matter is left to the agency's discretion, the failure of an agency to designate an employee's position as eligible for a "buyout" cannot constitute an "adverse personnel action" within the meaning of Title VII's prohibition of reprisal in the federal sector.  *See* 42 U.S.C. §2000e-16.

### Analysis

### Partial Dismissal

As a preliminary matter, the court notes that it dismissed with prejudice on June 18, 2001 the above-entitled action, insofar as Lawton made claims for punitive damages, insofar as

11

she made claims under the Age Discrimination and Employment Act

("ADEA"), and insofar as she sought relief for claims or for

events not accepted for processing by defendant in its notice of

October 26, 2000.  In its notice of partial acceptance of October

2000, the VAMC did not accept the following events for processing

because they were beyond the statutory 45-calender day time limit

for seeking EEO counseling: "Claim A - Duty Assignment: From

October 1996 through September 15, 1997, [Lawton] performed the

duties of EEO Manager/Regional Counsel Program Assistant without

a position description.  Claim B - Position Description (a) On or

about September 15, 1997, your position description was re-

classified from an Administrative Assistant, GS343-8/9, which

would have possibly increased [her] pay, to a Program Support

Assistant (OA), GS-303-8. (VAMC Exh. 3, Notice of Partial

Acceptance: Dismissing Claim A and event (b) under claim B).  The

events that were accepted by the VA in its notice of partial

dismissal of October 26, 2000, and thus were not dismissed by

this court include the following: "Claim B - Position Description

(b) You [Lawton] submitted three (3) requests, on 3/11/99,

6/22/99, and 7/2/99, to have [the] position description re-

classified to reflect the duties [she was] preforming as Acting

EEO Manager since March 2, 1998.  On March 10, 2000, your

Director informed you that since he need someone of color, the

position of EEO Manager would be announced competitively.  Claim

C - Performance Evaluation:  Since March 1998 [Lawton] ha[s] not been evaluated on the duties [she] preformed as Acting Program Manager.  Claim D - Promotion (a) Although the position of EEO Manager was previously classified higher than the GS-8 grade level, since March 2, 1998, [Lawton] ha[s] been performing the duties of Acting EEO Manager while being paid at the GS-8 level. (b) On April 28, 2000, [Lawton] w[as] informed that [she] w[as] not qualified for the position of EEO Manager, GS12/13, Vacancy Announcement Number 00-06 because [she] failed to meet the time-in-grade requirements and lacked one year (1) of specialized experience at the GS-11 grade level."

### The Prima Facie Case

Lawton makes claims under Title VII for race and/or gender discrimination in regards to the VAMC's failure to select her for promotion to EEO Manager.  Because Lawton has not presented direct evidence of discrimination this case is analyzed under the *McDonnell Douglas/Burdine* shifting burden framework. Under this framework, Lawton must initially establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence.  If Lawton can establish her *prima facie* case of discrimination then there is an inference that the VAMC was influenced by a discriminatory animus.  The burden then shifts to the VAMC to articulate a legitimate non-discriminatory reason for its decision. If the VAMC can proffer a non-discriminatory reason for

13

its decision, the burden then shifts back to Lawton to prove that the reasons articulated by the employer were a pretext for unlawful discrimination.

In order to establish her prima case of failure to promote on the basis of racial and/or gender discrimination, Lawton must show: 1) that she is a member of the protected group (i.e., white for a claim of "reverse" discrimination and female for a claim of gender discrimination); 2) that she was not selected for the position that she applied; 3) that she was otherwise qualified for the position, and; 4) the person selected for the position was outside the protected group.

Lawton's *prima facie* case of race discrimination fails because DeFilippo, the selectee for the position of EEO Manager, is white and therefore not outside the protected group for Lawton's claim of discrimination.  Accordingly, Lawton's claim of race discrimination will be dismissed by separate order.

Lawton cannot meet the third element of her *prima facie* case of gender discrimination because she was not "otherwise qualified" for the position of EEO Manager.  Lawton lacked time-in-grade at the GS-11 level, and she lacked one year of specialized experience.  Lawton's view of this case, however, is that the VAMC's persistent delays in acknowledging her work efforts as "Acting" EEO Manager resulted in her not being qualified and not having the requisite time-in-grade to compete

14

for the EEO Manager's position.  Furthermore, it is Lawton's
contention that the VAMC's delays were the result of its
discriminatory animus towards females, and accordingly she was
denied the position of EEO manager because of her gender, female.
In other words, it is Lawton's premise that had it not been for
the VAMC's discriminatory animus she would have been able to
compete for the position.

Based on the undisputed facts, Lawton's theory of the
present action is flawed.  From November 1984, when she first
entered service with the VAMC until October 1996, when she became
the Administrative Assistant to McFadden and Sanderson, Lawton
had been promoted from a GS-3 level to a GS-7, a total of four
grade levels achieved in twelve years.  In May 1997, a new
position description was written by the VA's Personnel Service
Office in Atlanta for the Program Assistant Position, Lawton's
position at the time.  The Program Assistant Position graded out
at a GS-8.  On March 2, 1998, Lawton became the "Acting" EEO
Manager upon Watts departure and urgence.  The earliest possible
date that Lawton could have become eligible for a GS-9 level was
upon completion of one year of time-in-grade at the GS-8 level,
May of 1998.  Even if Lawton had been reclassified as a GS-9 on
the very day she became eligible, the highest level she could
have obtained by March of 2000 would have been a GS-10 with ten
months of time-in-grade.  The Vacancy Announcement for the

position of EEO Manager was listed as a GS-12 with a requirement
of one year of specialized experience equivalent to the GS-11
level.  Lawton simply was not qualified for a GS-12/13 position
in March of 2000.  What Lawton wants is for the VAMC to violate
personnel policy regulations so that she can be singled out for
special treatment and given a promotion of four grade levels for
two years of work.[2]  The VAMC contends and Lawton has not
disputed that the federal civil service system does not permit
promotions such as this.  Competitive promotion procedures must
be used when temporary promotions exceed 120 days.  The VAMC
failed to follow competitive promotion procedures when it
initially made Lawton the "Acting" Interim EEO Manager, however,
after Lawton made several request for a desk audit this was
corrected.  After the desk audit of October of 1999, Lawton was
temporarily promoted to a GS-9 for 120 days followed by a
permanent promotion to GS-9 in May 2000, as the guidelines
direct.  The VAMC could not, without violating VA guidelines,
promote Lawton to a GS-12 by allowing her to remain in a
temporary promotional position without following competitive
procedures.[3]  Lawton's disappoint is understandable, considering

_____

[2]Lawton expected a four grade level promotion in two years
due to her stint as "Acting" EEO Manager when it took her twelve
years to achieve promotion from a GS-3 level to GS-7 level.

[3]One exception to competitive promotion procedures is to
promote an employee one grade level due to accretion of duties
and responsibilities. See (VAMC Brief in Reply, Attachment A, MP-

her perspective.  As Lawton see it, she was qualified for the position of EEO Manager because she was doing the work.  The fact that Lawton was not "technically" qualified for the EEO Manager position when the time came to fill it, may seem unfair, but it does not constitute gender discrimination under Title VII.

Assuming *arguendo* that Lawton has established her *prima facie* case of gender discrimination based on her contention that she was indeed qualified for the EEO Manager's position because of the experience she gained while serving as "Acting" EEO Manager, she has not presented evidence of pretext.  The VAMC selected the most qualified applicant, DeFilippo, a GS-11 with more specialized experience than Lawton.  In order to overcome the VAMC's motion for summary judgment, Lawton must present evidence to rebut the VAMC's proffered legitimate reason for selecting DeFilippo, that he was the most qualified applicant. Outside of her own opinions or perceptions that the VAMC was seeking a male applicant and "someone of color," the only evidence that Lawton can point to that suggest pretext is the timing between Lawton's temporary promotion to a GS-9 running out and the announcement of the EEO Manager's position.  However, this is not enough to show that the VAMC's reasons are pretextual.  The VAMC failed to follow procedural guidelines when it initially made Lawton "Acting" EEO Manager.  However, once

---

5, Part 1, Chap. 335, Section C, ¶¶ 6(d), 12(a)(2).

Lawton initiated the desk audit that was conducted in October of 1999, the VAMC was bound by temporary promotion procedures to act as it did.  One mistake does not require another.  Lawton could not be elevated two grade levels without opening the position up for competitive bid.  The court finds that Lawton has not presented enough evidence to suggest that the VAMC's reason for hiring DeFilippo is pretextual, and accordingly summary judgment will be granted on Lawton's gender discrimination claim.

## Retaliation

Lawton also claims that the VAMC discriminated against her when during settlement negotiations it offered her a "buyout," but only if she would drop the present action.  To prove retaliation under Title VII Lawton must show that 1) she engaged in statutorily protected activity; 2) that an adverse employment action[4] occurred; and, 3) that the adverse action was causally related to her exercise of her protected activities.  *Coutu v. Martin County Bd. of Comm'r*, 47 F.3d 1068, 1074 (11th Cir. 2001).  Lawton meets the first and third elements of her *prima facie* claim of discrimination.  Lawton engaged in protected activity when she originally filed a charge with the EEO and subsequently

---

[4] Section 2000e-16(a) provides that "[a]ll personnel actions affecting employees or applicants for employment in military departments ... executive agencies... shall be made free from any discrimination." "Personnel action" means an affirmative act that has a direct impact on an employee and for purposes of this claim will be analyzed as an "adverse employment action."

filed this lawsuit, and the "buyout" offer is causally connected because it was part of the settlement negotiations in the present action. However, the pivotal question is whether or not the VAMC's settlement offer of a "buyout" coupled with a dismissal of Lawton's action constitutes an "adverse employment action." The VAMC contends that this cannot be an "adverse employment action" because it had total discretion as to whether or not to offer Lawton a "buyout." But the "[c]ourts have sustained Title VII claims even where an employer had every right to take the action that it did." *Shager v. Dallas County Hosp. Dist.*, 1997 Dist. LEXIS 23451 citing *Jones v. Ryder Services*. In *Jones v. Ryder Services*, the court held that Title VII applied to an employer who withdrew an employee's workers' compensation settlement offer in retaliation for filing EEOC charges. *Jones v. Ryder Services Corp.*, 1997 W.L. 158329 (N.D. Ill.). Similarly, in *Wright v. Kosciusko*, the court denied summary judgment on an employee's claim that the employer's failure to honor a settlement offer that the parties had already reached when the employee filed an administrative ADEA charge, amounted to retaliation in violation of Title VII. *Wright v. Kosciusko Medical Clinic, Inc.*, 791 F. Supp. 1327 (N.D. Ind.). Nonetheless, even if this court were bound by *Jones* and *Wright,* these cases can be distinguished on the facts. In both cases, offers were made and then withdrawn in retaliation for the party engaging in protected activity. In the

19

present case, the VAMC made a "buyout" offer conditioned on Lawton's dismissal of her action *as part of a settlement offer*. Lawton could have accepted the offer of the $25,000 "buyout," but instead she refused on advice of counsel. Lawton chose not to accept the offer and decided instead to remain in her present position and pursue this action. The VAMC cannot be accused of retaliation for merely attempting to achieve an outcome by settlement that was in its best interest. Settlements are to be encouraged. If offering a settlement of a pending case can provide the basis for a new case, it would be a novel concept. Lawton contends that because the VA requires that certain criteria be strictly followed when offering "buyouts," the offer was a privilege or term of employment and denial of that privilege or term constitutes retaliation. The court disagrees. If settlement negotiations are allowed to expose an employer to additional claims of retaliation for attempting to resolve matters in its favor, then settlement negotiations would be disfavored, and few and far between.

Assuming a settlement offer can ever be grounds for a retaliation claim, Lawton has not shown by substantial evidence that she was entitled to the "buyout" and was denied the "buyout" in retaliation for her protected activity. *See Woodland v. Joseph T. Ryerson & Son*, 302 F.3d 839, 845 (8th Cir. 2002)(expressing doubt that a "settlement offer could ever be

20

construed as potentially unlawful retaliation"). In order to be an "adverse employment action," Lawton must show that she was treated differently than similarly situated individuals; this she has not done. Lawton has presented a mere scintilla of evidence to suggest that there were other similarly situated employees that were offered a "buyout" free of conditions. Lawton cannot rely on her own mere allegations and conclusions at the summary judgment stage. The court finds that Lawton's refusal of a settlement offer conditioned on the dismissal of her action was not an act of retaliation. Lawton has not presented evidence to demonstrate that this was proscribed disparate treatment. Accordingly, the VAMC is entitled to summary judgment on Lawton's claim of retaliation.

### Conclusion

For the foregoing reasons summary judgment for the VAMC will be granted. A separate and appropriate order will be entered. DONE this ___29ᵗʰ___ day of October, 2002.


WILLIAM M. ACKER, JR.

UNITED STATES DISTRICT JUDGE